# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **BRYAN FROHLICH**, on behalf of himself and others similarly situated, | ) ) ) Case No. 3:22-cv-01852 |
| Plaintiff, | ) ) JUDGE JACK ZOUHARY |
| v. | ) ) **JOINT MOTION FOR APPROVAL** |
| **HEXAGON MANUFACTURING INTELLIGENCE, INC.,** | ) **OF FLSA COLLECTIVE ACTION** ) **SETTLEMENT** ) |
| Defendant. | ) ) |

Plaintiff Bryan Frohlich ("Plaintiff") and Defendant Hexagon Manufacturing Intelligence, Inc. ("Defendant") (collectively, the "Parties") respectfully move the Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations and facilitated by a third-party neutral. The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"), along with its Exhibit A (Claim Form) and Exhibit B (Notice of Settlement);

**Exhibit 2**: Declaration of Jeffery J. Moyle (hereinafter "Moyle Dec."); and,

**Exhibit 3**: Proposed Order approving settlement.

In support of this Joint Motion, the Parties state as follows:

## I.  STATEMENT OF FACTS

### A.  Factual and Procedural Background.

On October 13, 2022, Plaintiff filed this lawsuit, on behalf of himself and others similarly situated, asserting claims against Defendant under the FLSA. Specifically, Plaintiff alleges that he and other alleged similarly situated Field Service Engineers routinely worked in excess of 40 hours per week, but that Defendant did not pay them overtime compensation at a rate of at least one and

one-half times their regular rates of pay for hours exceeding 40 in a workweek. (ECF #1). Defendant filed its Answer on November 10, 2022, denying Plaintiff's material allegations, and denying that it violated the FLSA in any way. (ECF #5). Defendant continues to deny any and all liability to the putative collective.

After this case was filed, the Parties exchanged information about their respective positions and engaged in informal discussions of whether settlement of this case would be feasible. (Moyle Dec. at ¶ 9). The Parties agreed to mediate this case. (*Id.*). The case was stayed pending the outcome of mediation. (ECF #8).

In preparation for mediation, Plaintiff and Defendant randomly selected 20% of the putative collective, and Defendant provided Plaintiff timekeeping and payroll data for the sample. (Moyle Dec. at ¶ 10). Plaintiff's Counsel engaged a PhD-level data scientist to construct a damages model from the data provided by Defendant. (*Id.*). The model calculated the alleged damages based on various assumptions, which could be modified. (*Id.*). In advance of mediation, Plaintiff's Counsel shared this damages model with Defendant's counsel. (*Id.*).

The Parties engaged in mediation on October 4, 2023, with well-respected mediator Frank Ray. (Moyle Dec. at ¶ 11). At the conclusion of a full day of mediation, during which the Parties were able to debate the merits and alleged damages at issue, the Parties reached an agreement to resolve all claims asserted. (*Id.*). The terms of the Parties' agreement are embodied in the attached Exhibit 1.

    **B.**     **Summary of the Settlement.**

The Settlement includes all current and former Service Engineers, including those with different job titles but similar duties, employed by Defendant who worked 40 or more hours in any work week from October 13, 2019, through September 29, 2023. (*See* Exhibit 1). The total settlement amount, or Global Settlement Fund, is $800,000. This includes: (1) all Individual

Settlement Payments (defined below); (2) a Service Award for Plaintiff (defined below); (3) Plaintiffs' Counsel's attorneys' fees in the amount of one-third of the gross settlement amount; (4) Plaintiffs' Counsel's litigation expenses; and (5) the costs of settlement administration. The Global Settlement Fund does not include Defendant's share of the employer payroll tax contributions for payments made as W-2 wages under the terms of the Agreement.

A Notice of Settlement will be sent to the Eligible Settlement Participants, along with a Claim Form to join the Settlement. Each Eligible Settlement Participant that joins the settlement will become a Claimant and will receive a Settlement Award Payment, which shall be his or her *pro rata* share of the Net Settlement Fund based on the amount of allegedly unpaid overtime owed to the Eligible Settlement Participant. In exchange for this payment, the Action will be dismissed with prejudice, and Claimants will release their wage and hour claims against Defendant.

The Settlement provides for the payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of the total settlement amount and reimbursement of Plaintiffs' Counsel's costs and expenses. The Settlement also provides for a $7,500 Service Award to Plaintiff in recognition of, and in consideration for, his substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Members.

For the purposes of this Settlement, the Parties agree that Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b). Specifically, Plaintiff alleges in the Action that he and the Eligible Settlement Participants were all subject to Defendant's alleged single FLSA-violating policy of failing to pay them for overtime compensation for hours worked in excess of 40 hours per workweek. In addition, Plaintiff and the Eligible Settlement Participants were all classified as exempt employees under the FLSA by

Defendant[1], and Plaintiff alleges they all had similar job duties. (Exhibit 1 at ¶ 26).

## II. THE COURT SHOULD GRANT FINAL FLSA APPROVAL

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D.Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))). Here, the Settlement satisfies the seven factors used by the Sixth Circuit when evaluating class/collective action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3.

#### 1. No indicia of fraud or collusion exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-

---

[1] Defendant does not concede, and in fact disputes, that it violated the FLSA in any way, or that Field Service Engineers were improperly classified as exempt.

4

cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

Here, Defendant denies all liability and the Agreement was achieved only after arms-length and good faith negotiations between experienced counsel after a full day's mediation before a third-party neutral. (Moyle Dec. at ¶ 11). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 U.S. Dist. LEXIS 164152, at *14 (S.D. Ohio Sep. 25, 2018) Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them[.]") (citations omitted).

If this case had not settled, the Parties would be required to engage in costly litigation, including written discovery and depositions. Furthermore, if this case did not settle, there would be collective certification and dispositive motion briefing, and possibly a trial and subsequent appeals. Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. Thus, this factor favors approval of the settlement.

### 3. Investigation was sufficient to allow the parties to act intelligently.

The Parties engaged in substantial investigation and analysis before and while negotiating the Settlement. (Moyle Dec. at ¶ 25). Specifically, Defendant produced certain time and pay data for the putative collective. Plaintiffs' Counsel engaged the services of a PhD data scientist to

construct a damages model using the produced data, which was shared with Defendant's Counsel. (Moyle Dec. at ¶ 10). Both sides are represented by competent and skilled wage and hour attorneys. (Moyle Dec. at ¶¶ 2-8). During negotiations, Counsel argued vigorously for their respective positions, and disputes remain. (Moyle Dec. at ¶ 11). Accordingly, this factor supports settlement approval.

4.     **The risks of litigation favor approval**.

Settlement represents a compromise of disputed claims. Specifically, Plaintiff alleges that Defendant violated the FLSA by not paying overtime compensation to Field Service Engineers. Defendant disputes the asserted claims and raised a number of defenses, including that Field Service Engineers are properly classified as exempt from the overtime requirements of the FLSA. Though the matter settled, the Parties continue to disagree about the claims and defenses, including whether Defendant was liable, whether any wages are owed, whether liquidated damages are recoverable, whether Defendant acted willfully, whether the matter could proceed collectively, and to what extent Plaintiff could prove damages at trial, if any. Settlement eliminates any risk of loss and achieves finality in a case that could extend for years before a final resolution is reached. This favors approval of the settlement.

5.     **The opinion of Plaintiff's Counsel favors approval**.

"The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). Here, Plaintiff's Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and

6

vigorously advocated in the best interests of the Plaintiff and the other Eligible Settlement Participants.

It must also be noted that Plaintiff's decision to settle this case was not based on purely subjective factors. Rather, prior to coming to agreement on the terms of settlement, Plaintiffs' Counsel spent a significant amount of time doing an expected value calculation, using decision tree software called TreeAge Pro©. In this calculation, Plaintiffs' Counsel analyzed each potential risk of loss (e.g., FLSA notice and collective treatment, summary judgment, trial, liquidated damages, and willfulness) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to the damages model. Plaintiffs' Counsel represents that this exercise allowed them to more fully appreciate the entire risk picture of this case. Plaintiffs' Counsel represents that the total settlement amount exceeds the calculated expected value generated using TreeAge Pro. Consequently, Plaintiffs' Counsel strongly believes that the settlement is fair, adequate, reasonable, and in the best interests of the collective. (Moyle Dec. at ¶¶ 12-24). Accordingly, this factor favors approval of the settlement.

      **6.**    **The reaction of absent collective members**.

If the Court approves the settlement, Eligible Settlement Participants will receive a Notice of Collective Action Settlement and Claim and Release Form and have the option to join the settlement. Only those Eligible Settlement Participants that join the settlement will be bound by the Agreement. Those that do not join the settlement will retain the right to pursue their own claims if they choose. Thus, if an absent class member objects to the settlement, he or she can simply choose not to participate.

**7. The public interest**.

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13; *Barnes v. Winking Lizard, Inc*., No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Settlement collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id*. Therefore, just as in *Wright*, the Court should find that this factor supports approval of the Settlement.

**B. The Settlement distributions are fair, reasonable, and adequate**.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8, 2010); *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

Plaintiffs' Counsel conducted a thorough assessment of the claims and defenses, including a calculated expected value, which exceeded the total settlement amount. (Moyle Dec. at ¶ 22). Importantly, Judge Posner writing for a Seventh Circuit panel concluded that an EV is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987)(explaining an EV calculation where a settlement of $7 million would be justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion). Accordingly, the settlement is fair, reasonable, and adequate.

8

1. **The individual payments are reasonable and adequate.**

As mentioned above, as part of negotiations, Defendant produced time and pay data for a random sample of the putative collective. A PhD data scientist constructed a damages model using the produced data, which was shared with Defendant's counsel and used as the basis for negotiations. The total Settlement exceeds Plaintiff's pre-mediation expected value calculation and provides for an average payment of $3,960.00. Accordingly, and consistent with the opinion of Plaintiffs' Counsel, payments are reasonable and adequate. (Moyle Dec. at ¶ 27).

2. **The Service Award is proper and reasonable.**

The Agreement provides for a Service Award of $7,500.00 to Plaintiff in recognition of, and in consideration for, his substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Members. (Moyle Dec. at ¶ 28). Courts routinely approve service awards to Plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18; *see also Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

Here, Plaintiff provided critical facts and information throughout the litigation and participated during all stages of settlement negotiations. His involvement was crucial in enabling Plaintiff's Counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Plaintiff's Counsel's opinion, is more than fair and adequate. Furthermore, Plaintiff is currently employed by Defendant, and he was willing to take a substantial risk as the lead plaintiff in this

matter. (Moyle Dec. at ¶ 24). Therefore, a service award of $7,500 to Plaintiff is reasonable and should be approved.

### 3. The attorneys' fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

Here, the Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of $266,666.67, representing one-third of the total settlement amount. "The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly v. Airstream, Inc.*, S.D. Ohio No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *28 (Sep. 25, 2020) (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993)). "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, N.D. Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (July 27, 2018); *see also, Osman v. Grube, Inc.*, N.D. Ohio No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has

been approved in similar FLSA collective actions in this judicial district.") (Internal citation omitted).

This conclusion was reiterated in *Harsh v. Kalida Mfg.*, N.D. Ohio No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *20 (Sep. 13, 2021). In *Harsh*, the Court held that while a Court can utilize either the percentage-of-the-fund or the Lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *19-20. The Court further noted that the Lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* at *20. In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Furthermore, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Moyle Dec. ¶ 29). Thus, Plaintiff's Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19; *see also, Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at

\*16. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, S.D. Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at \*14 (June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). An award of one-third of the settlement fund is reasonable and still advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at \*14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). Consequently, the Court should find that the attorneys' fee award is reasonable and should be approved.

### 4. The Court should authorize reimbursement of costs.

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which are presently $3,944.03. (Moyle Dec. at ¶26). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at \*20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id*.

Plaintiff's Counsel's expenses include the filing fee and associated expenses, the cost of the mediator, the cost of the data analyst to construct a damages model, and postage costs. These costs and expenses were necessary to litigate and prosecute this lawsuit. (Moyle Dec. at ¶ 30). Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in

12

this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

### III. CONCLUSION.

The Parties submit that this settlement is a fair, reasonable, and adequate resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payments; and (4) retain jurisdiction to enforce the settlement, if necessary.

Respectfully submitted,

| **NILGES DRAHER LLC** | **GORDON REES SCULLY MANSUKHANI LLP** |
|---|---|
| */s/ Jeffrey J. Moyle* | */s/ Tyler Tarney (with permission)* |
| Jeffrey J. Moyle (0084854) | Tyler Tarney (0089082) |
| 1360 E. 9th St., Suite 808 | Eric Leist (0097145) |
| Cleveland, OH 44114 | 41 South High Street, Suite 2495 |
| Telephone: (216) 230-2955 | Columbus, Ohio 43215 |
| Facsimile: (330) 754-1430 | T: (614) 340-5558 |
| Email:jeff@ohlaborlaw.com | F: (614) 360-2130 |
| | ttarney@grsm.com |
| Hans A. Nilges (0076017) | eleist@grsm.com |
| 7034 Braucher Street, N.W., Suite B | |
| North Canton, OH 44720 | *Counsel for Defendant* |
| Telephone: (330) 470-4428 | |
| Facsimile: (330) 754-1430 | |
| Email:hans@ohlaborlaw.com | |

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on November 20, 2023. Parties may access this filing through the Court's system.

*/s/ Jeffrey J. Moyle*
*Counsel for Plaintiffs*